UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

_____
                                              )
KEVIN D. WICKSTROM;                           )
ROBERT D. WILLIAMSON;                         )
ERIK W. WICHMANN;                             )
JAMES R. BREITSPRECHER;                       )
TONY H. MCKENZIE;                             )
LEIGH SMITH;                                  )
JON A. STERLING;                              )
FORACE HOGAN;                                 )
CHRISTOPHER P. GATES;                         )
and JOHN ELLIS,                               )
                                              )
        Plaintiffs,                           )
                                              )
        v.                                    )        Case No. 3:22-cv-315
                                              )
UNITED AIRLINES MASTER                        )        COMPLAINT
EXECUTIVE COUNCIL                             )
and AIR LINE PILOTS ASSOCIATION,              )        [DEMAND FOR JURY TRIAL]
INTERNATIONAL,                                )
                                              )
        Defendants.                           )
_____)

## COMPLAINT

Plaintiffs Kevin D. Wickstrom, Robert D. Williamson, Erik W. Wichmann, James R. Breitsprecher, Tony H. McKenzie, Leigh Smith, Jon A. Sterling, Forace Hogan, Christopher P. Gates, and John Ellis (collectively, "Plaintiffs") bring this action against Defendants United Airlines Master Executive Council ("UAL MEC") and Air Line Pilots Association, International ("ALPA") (collectively, "Defendants") for breach of the union's duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151, *et seq*. For their complaint, Plaintiffs state as follows upon personal knowledge as to those matters pertaining to them individually and upon information and belief as to the remaining allegations:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 in that it arises under the laws of the United States and Acts of Congress regulating commerce, specifically the Railway Labor Act, 45 U.S.C. § 151, *et seq.* The damages sought exceed $10,000.00.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims arose in this district. Furthermore, Plaintiff Wickstrom resides in this district and Defendants do business in this district.

## PARTIES

3. Plaintiff Wickstrom is a citizen and resident of the state of Texas and county of El Paso. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

4. Plaintiff Williamson is a citizen and resident of the state of Colorado and county of Douglas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

5. Plaintiff Wichmann is a citizen and resident of the state of Arizona and county of Maricopa. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

6. Plaintiff Breitsprecher is a citizen and resident of the state of Utah and county of Davis. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

7. Plaintiff McKenzie is a citizen and resident of the state of Colorado and county of El Paso. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

8. Plaintiff Smith is a citizen and resident of the state of Indiana and county of Starke. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

9. Plaintiff Sterling is a citizen and resident of the state of Texas and county of Dallas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

10. Plaintiff Hogan is a citizen and resident of the state of California and county of Los Angeles. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

11. Plaintiff Gates is a citizen and resident of the state of Colorado and county of Douglas. He was a pilot for United Airlines and dues-paying member of ALPA until he was terminated for refusing to comply with Unites Airlines' mandatory COVID vaccination program.

12. Plaintiff Ellis is a citizen and resident of the state of Wisconsin and county of Waukesha. He was a pilot for United Airlines and dues-paying member of ALPA until he was

terminated for refusing to comply with United Airlines' mandatory COVID vaccination program.

13. Defendant UAL MEC is a chapter within ALPA that was at all relative times the certified collective bargaining representative under the Railway Labor Act for Plaintiffs. 45 U.S.C. § 151, *et seq*. Upon information and belief, Defendant's principal place of business is Rosemont, Illinois.

14. Defendant ALPA is a national labor union and was at all relative times the certified collective bargaining representative under the Railway Labor Act for Plaintiffs. *Id*. Upon information and belief, Defendant's principal place of business is McLean, Virginia.

15. Plaintiffs have the capacity and standing to sue. Defendants have the capacity to be sued. All conditions precedent have been satisfied.

## INTRODUCTION

16. When United Airlines ("United") announced a mandatory vaccination program for its unionized pilot workforce in August 2021, there was virtually no push back from the Defendants in this case, even though they were the sole collective bargaining representatives for United pilots and were in the process of negotiating a new contract under an expired collective bargaining agreement. Not only did Defendants fail to challenge the involuntary vaccination program imposed on its members, but they also attempted to discourage its members from filing any grievances against the program. When Plaintiffs did file grievances, Defendants limited the reach of those grievances so that the actual vaccine program would not be challenged. Defendants ultimately decided to cut off processing Plaintiffs' grievances notwithstanding the fact that Defendants had received legal interpretations indicating that the original grievances were well-founded and

appropriate to challenge United's vaccine mandate. Defendants' actions were the culmination of a calculated effort, that lasted almost two years, to ensure that United's vaccine mandate was enforced against Defendants' membership in order to maintain federal funding and support the political narrative established under the current administration.

### **FACTS**

17. On or about April 15, 2020, United accepted approximately $5 billion in funding through the Federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The company benefited from additional infusions of money via follow-up federal programs such as the Payroll Support Program and the American Rescue plan. The conditions attached to the receipt of these funds ultimately prohibited United from conducting layoffs, involuntary furloughs, or cutting the pay rates of employees until September 30, 2021, or until the funds were exhausted, whichever occurred later.

18. At no time did Defendants demand an accounting from United as to the status of this fund, and, in particular, did not inquire about the status after United announced layoffs, pay cuts, and pilot terminations as part of its vaccination program. For example, Defendants provided nothing other than notice to the workforce when United management implemented WARN Act notices.

19. Upon information and belief, Defendants supported United's receipt of federal funds and supported all COVID-19 initiatives undertaken by United in an effort to maintain this federal funding. This included a dramatic increase in United's line of credit shortly after United Chairman Kirby indicated his preference for 100% vaccination rates within the company. At a World Economic Forum meeting, Kirby also stated that he supported the

White House effort to mandate vaccinations for virtually all of the federal and private sector workforce.

20. At all times during the occurrence of the events noted in this Complaint, Defendants and United were operating under the terms of a lapsed collective bargaining agreement. Under these circumstances, all parties were required by the Railway Labor Act to maintain the terms and conditions of the previous collective bargaining agreement until a new contract was signed.

21. During the fall and early winter of 2020-21, Defendants negotiated several letters of agreement with United related to seniority and furlough mitigation. Specifically, Letter of Agreement ("LOA") 20-05 was negotiated with the company and then submitted to the union membership for ratification in accordance with Article XIII- Section 7 of the United MEC policy manual. That provision requires member ratification when an agreement between Defendants and United "substantially affects wages, working conditions."

22. On May 28, 2020, Defendants advised Plaintiffs and the United pilot membership that they should expect United management to try to unilaterally alter the collective bargaining agreement with respect to working conditions as a result of the COVID pandemic and called for a unified front to forestall United management efforts.

23. Within two weeks of United CEO Kirby indicating that he expected mandatory workplace vaccinations to be in place, Defendants echoed his remarks in a memo to their membership on January 25, 2021. Defendants erroneously claimed that a vaccine mandate was contractually permissible (but offered no authority in the United Pilots' Agreement in support) and at the same time tried to minimize the possibility of individual exceptions based on religious or disability claims.

6

24. At no time did Defendants poll or discuss with their membership whether they should oppose a vaccine mandate put in place by United management.

25. In a letter signed by five other unions on January 28, 2021, Defendants lobbied congressional leaders for continued funding of the federal assistance and indicated their support for an aggressive public vaccination campaign.

26. After the Federal funding for United continued, as part of the Payroll Support Program, on March 11, 2021, furlough layoff and pay reduction protection was extended until September 30, 2021, or until all the funds were expended, whichever was later. Notwithstanding this prohibition, Defendants, via a Letter of Agreement (LOA 21-02), assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots two months later, without submitting the LOA to United pilot membership as required.

27. Following its adoption on May 25, 2021, United breached the terms of LOA 21-02 by requiring employees to justify their request for vaccine exemptions prior to the LOA's termination. Defendants did not challenge this breach but rather claimed the issue was of a "personal" nature and therefore between their union members and United. Moreover, the union did nothing to stop United management from arbitrarily designating and increasing the number of airports and countries as "vaccination destinations" under the terms of LOA 21-02, thereby restricting the number of airports available to unvaccinated pilots and increasing the likelihood that they would suffer a financial penalty based on their vaccination status.

28. LOA 21-02 also eliminated any requirement for pilots to divulge their vaccination status or to take the vaccine during the term of the letter agreement. Again, the union did nothing

when United management began requiring such disclosures and mandating the shot before United management voided the agreement.

29. In addition to its overall nonchalance about member rights with respect to vaccination, Defendants' senior leadership was personally hostile to union members who were unvaccinated. On May 27, 2021, Defendant UAL MEC's chairman Todd Insler told a member who raised an objection to the emergency use authorization status of the vaccine to "go get a fucking shot and collect $4K or he can STFU".

30. At the beginning of July 2021, United's CEO decided that he was going to initiate a vaccine mandate on his workforce. He decided this although United and Defendants were working under an expired collective bargaining agreement and federal law specifically prohibited un-bargained for major changes in the status quo in this circumstance. Defendants refused to raise this issue with United management when the program was implemented. Senior United officials later stated that the vaccine mandate and leave without pay furlough were not negotiated with Defendants, but rather were "socialized".

31. United management also violated the collective bargaining agreement by sending postcards in the mail with individual employee vaccination status clearly available to anyone handling the postcard. Defendants did not raise an objection.

32. On August 1, 2021, United management established its reasonable accommodation process ("RAP") for vaccine objectors. Although this was clearly a modification of the terms and conditions of employment covered by the collective bargaining agreement, Defendants raised no objection.

33. United management announced the vaccine mandate on August 6, 2021. Although the mandate clearly altered the terms and conditions of employment for its members,

8

Defendants did not raise an immediate objection, did not seek to block the mandate by going into court or seeking arbitration under the Railway Labor Act, and did not take any other action to oppose the mandate program. In response to United management's declaration of a vaccine mandate, Defendants advised their members that the only objection to a mandatory vaccination program was an EEOC-based one and not something included under the collective bargaining agreement.

34. Immediately after the announcement of the vaccine mandate, Defendants began advising their members that the mandate was a "job qualification" versus a "condition of employment." Defendants claimed that United may determine job qualifications unilaterally under the terms of the collective bargaining agreement. From that point forward, the union actively opposed any attempt by its members to challenge the vaccine mandate.

35. As part of its RAP, United began illegal inquiries into the religious practices of its employees who claimed religious exemptions from the vaccine mandate. This included Defendants' members. Although the United Pilots' Agreement contained a specific provision allowing the union to intervene on a pilot's behalf regarding matters of discrimination and violations of federal law, Defendants continued to take a hands-off stance in the face of these violations.

36. In an effort to discourage vaccine exemptions and support United management by boosting vaccination numbers among its membership, Defendants distributed incorrect legal advice concerning the religious accommodation process, literally telling their members that in order to claim a proper religious accommodation they must be an adherent of a recognized religion with an established opposition to the vaccination process.

37. On August 24, 2021, United pilots filed a grievance with the Chief Pilot Office of Defendants' Chicago operation. The grievance claimed Railway Labor Act Section 6 status quo violations, contract violations, and LOA 21-02 violations. Other pilots, including Plaintiffs, began filing their own grievances opposing the vaccine mandate.

38. In response to the grievances, Defendants deliberately altered their role in the grievance process by attempting to have the members "self-file" their grievances because the union did not support the action. Pilot members who filed grievances against the vaccine mandate were told that the union wanted nothing to do with the vaccine mandate grievances and prohibited union staff from arguing on behalf of the aggrieved pilots.

39. Defendant ALPA, at least temporarily, recognized the issues with United's mandatory vaccine program when it noted in an editorial published in ALPA magazine on September 1, 2021, that ALPA "has been very clear that any vaccination requirements are an issue that must be bargained for and ultimately agreed to by each ALPA pilot group."

40. After September 1, 2021, Defendants' leadership hardened against unvaccinated members who challenged the United vaccine mandate. Local chapter leadership of Defendants refused to accept individual member grievances as required by Defendants' policy. For example, on September 2, 2021, a Defendant official told a pilot member asking for assistance in filing a grievance opposing the RAP that, "ALPA has zero to do with that issue…Even if you are successful in the RAP, that doesn't mean you'll still be a pilot at United."

41. Defendants failed to protest or otherwise raise an objection to the RAP enacted by United management on or about September 9, 2021, with a leave of absence provision that had no basis in, and in fact violated, the collective bargaining agreement.

42. On September 10, 2021, Defendant MEC advised United's Senior Vice President for Operations that Defendants will not support the pilot mandate challenges.

43. On September 23, 2021, the initial hearing officer for the grievances opposing the vaccine mandate filed by individual pilots in Denver rejected their grievances. This was repeated across United for all grievances opposing the vaccine mandate, and with no support for Defendants.

44. On September 28, 2021, ALPA filed an "instant grievance" on behalf of approximately 12 pilots, including several Plaintiffs, who were neither vaccinated nor had an approved RAP. The union took the position that it would not challenge the vaccine mandate, but rather requested that the company treat unvaccinated pilots as lacking qualification and therefore subject to limited discipline. In other words, the union argued that unvaccinated pilots were guilty of violating a company policy but that their penalty should be mitigated. The case went to an arbitrator for hearing on the issue of whether the mandate was a pilot qualification requirement or a term and condition of employment.

45. On September 28, 2021, Defendant UAL MEC's Chairman Insler, noting that American and Southwest unions are proposing work slowdowns, stated that it must be awkward for those businesses that asked for exemptions and compensation from the Government while United's pilots were 100% vaccinated and did not need to deal with unvaccinated exemptions or disruptions.

46. In its quarterly report on October 14, 2021, Defendants deliberately misstated the vaccine mandate as a job qualification versus a condition of employment, something that even United management did not agree with. This was done in an effort to obscure the fact that

the vaccine mandate was indeed a bargainable issue under the terms of the collective bargaining agreement.

47. United began terminating Plaintiffs from employment on November 1, 2021. In addition, all remaining unvaccinated pilots were forced on unpaid leave starting on November 11, 2021.

48. In December 2021, United SVP Quigley denied the "self-filed" grievances of individual United pilots; they appealed to Defendant MEC's grievance panel for a decision to take the cases to arbitration.

49. On February 15, 2022, the grievance system board of adjustments arbitrator rendered an opinion on the September 28, 2021 "instant grievance" filed by Defendants. The arbitrator found that the vaccine mandate was not a "pilot qualification" issue. The decision put Defendants on notice that the vaccine mandate is in fact a term or condition of employment likely subject to Section 3 or Section 6 arbitration under the Railway Labor Act.

50. On March 11, 2022, Defendants' grievance review board denied Plaintiffs' grievance from moving forward to the system board of adjustment where the "terms and conditions of employment" argument could be raised formally through the parties' grievance system.

51. Defendants' decision effectively ended the ability of Plaintiffs to challenge the vaccine mandate program through their collective bargaining agent and meant that Defendants would not challenge their terminations or seek to remedy them.

## COUNT I

### Breach of the Duty of Fair Representation

52. Plaintiffs reallege and incorporate by reference paragraphs 1 through 51 above as if fully set forth herein.

53. Plaintiffs assert herein a claim against ALPA and UAL MEC for breach of their duty of fair representation to Plaintiffs under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* Under this Act, ALPA and UAL MEC, as the exclusive bargaining agents of United's pilots, owe a duty of fair representation to Plaintiffs.

54. A union breaches its duty of fair representation where its actions are arbitrary, discriminatory, or in bad faith. *Martin v. American Airlines, Inc.*, 390 F. 3d 601, 606 (8th Cir. 2004).

55. Defendants' collusion with Plaintiffs' employer, United Airlines, and their refusal to pursue Plaintiffs' meritorious grievances against the new vaccine requirement were in violation of their duty of fair representation because their conduct was in bad faith, arbitrary, and discriminatory.

56. A union acts in bad faith where it acts or fails to act due to an improper motive. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). Defendants colluded with United to implement the vaccine mandate, refused to challenge the mandate, and refused to represent pilots who were placed on unpaid leave or terminated as a result of the mandate.

57. Pursuant to 45 U.S.C. § 156, Defendants and United were required to provide employees with notice of an "intended change in agreements affecting rates of pay, rules, or working conditions." United was not permitted to make changes to rates of pay, rules, or working conditions while the change was being mediated and finalized—*i.e.*, United was required to maintain the "status quo."

58. When United Airlines unilaterally mandated the vaccine, Defendants had a duty to object to the implementation of the requirement on the basis that United changed the rates of pay and working conditions for unvaccinated pilots in particular.

59. Defendants did nothing to challenge the mandate. Moreover, Defendants refused to represent member pilots who requested the union to represent them in their requests for exemption and their subsequent grievance submissions. Instead, Defendants told pilots they must bring their exemption requests directly to United. Defendants also echoed United polices and rationales when faced with questions from member pilots as to the legality of the mandate and applicable exemptions.

60. Defendants were improperly motivated by their desire to represent the interests of United as opposed to their own members to whom they had a legal duty to fairly represent.

61. Arbitrary conduct is defined as conduct that is "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). Employees must show "fraud, deceitful action, or dishonest conduct." *Baxter v. United Paperworkers Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998) (citing *Washington v. Service Employees Int'l Union, Local 50*, 130 F.3d 825, 826 (8th Cir. 1997).

62. Defendants' failure to follow its own policies that required member ratification of LOAs and its collusion with United to not oppose an alternation to the company's basic employment conditions was so far outside a wide range of reasonableness as to be irrational. Additionally, in colluding with United and failing to submit LOA 21-02 for member ratification, Defendants' actions were deceitful and dishonest towards Plaintiffs, all of whom they were responsible to represent fairly.

63. To breach the duty of fair representation, discriminatory conduct must be "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. Of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). United effectively created two classes of pilots when it implemented LOA 21-02—those who were vaccinated and those who were not. Defendants failed to oppose United's discriminatory policies in which vaccinated pilots received certain benefits and incentives while unvaccinated pilots faced dropped flights and pay cuts.

64. Defendants' discriminatory conduct was compounded by their refusal to advocate for unvaccinated pilots who were placed on unpaid leave or terminated following the implementation of the vaccine mandate. Defendants' conduct in colluding with United and refusing to oppose United's two-class system as well as the mandate itself was intentional, severe, and unrelated to legitimate union objectives.

65. Plaintiffs, as a direct result of Defendants' bad faith, arbitrary, and discriminatory conduct in their failure to adhere to their duty of fair representation to Plaintiffs, have been deprived and continue to be deprived of their employment with United Airlines in addition to wages and benefits associated with their employment.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Award Plaintiffs compensatory damages in an amount to be determined, including pre- and post-judgement interest;

B.    Award the Plaintiffs their reasonable attorney fees and costs of the suit; and

C.    Grant such other and further relief as is just and proper under the circumstances.

Dated: September 7, 2022                    Respectfully submitted,

Christopher Halbohn (Texas SBN: 24109967)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
chalbohn@dhillonlaw.com

*/s/ John-Paul Singh Deol*
John-Paul Singh Deol (*Application for Admission pending*)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
jpdeol@dhillonlaw.com

*/s/ John J. Michels, Jr.*
John J. Michels, Jr. (*Seeking Pro Hac Vice Admission*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
lmichels@fedpractice.com

*/s/ Saroja C. Koneru*
Saroja C. Koneru (*Seeking Pro Hac Vice Admission*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006

*Counsel for Plaintiffs*

## REQUEST FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.


Dated: September 7, 2022                Respectfully submitted,


Christopher Halbohn (Texas SBN: 24109967)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone:  (415) 433-1700
Facsimile:  (415) 520-6593
chalbohn@dhillonlaw.com

*/s/ John-Paul Singh Deol*
John-Paul Singh Deol (*Application for Admission pending*)
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone:  (415) 433-1700
Facsimile:  (415) 520-6593
jpdeol@dhillonlaw.com

*/s/ John J. Michels, Jr.*
John J. Michels, Jr. (*Seeking Pro Hac Vice Admission*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone:  (202) 862-4360
Facsimile:  (888) 899-6053
lmichels@fedpractice.com

*/s/ Saroja C. Koneru*
Saroja C. Koneru (*Seeking Pro Hac Vice Admission*)
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone:  (202) 862-4360
Facsimile:   (888) 899-6053

*Counsel for Plaintiffs*